Shirley GAINES, Patricia Ann Gaines, Marian Gaines, minors, by Monroe Gaines, their father and next friend, and others, Plaintiffs,

v.

**DOUGHERTY COUNTY BOARD OF ED-UCATION, a public body corporate, and others, Defendants.**

Civ. A. No. 764.

United States District Court
M. D. Georgia,
Albany Division.

July 12, 1963.

Supplemental Opinion Aug. 27, 1963.

Constance Baker Motley, Norman Amaker, New York City, C. B. King, Albany, Ga., Donald L. Hollowell, Atlanta, Ga., for plaintiffs.

Perry, Walters & Langstaff, Albany, Ga., for defendants.

ELLIOTT, District Judge.

This is a proceeding seeking to enjoin the Dougherty County Board of Education, its members and the Superintendent of Education of Dougherty County, Georgia, from operating a bi-racial school system in Dougherty County. Subsequent to the filing of the original complaint the Plaintiffs made application for temporary injunction and the matter came on for hearing before the Court on July 8, 1963. The Court heard evidence and arguments of counsel and now files this opinion which is intended as compliance with the provisions of Rule 52, Federal Rules of Civil Procedure.

The Plaintiffs in this case are all members of the Negro race and they bring this action on their behalf and on behalf of the other Negro children in Dougherty County who are similarly situated and affected. The Plaintiffs are all citizens of the United States and of the State of Georgia residing in Dougherty County. They are all eligible to attend the public schools in Dougherty County and all of the circumstances indicate that this is a proper class action insofar as the question of assignment of pupils in the public school system of Dougherty County is concerned.

The Dougherty County Board of Education, and its members and other officials named as Defendants in the complaint, have the duty of operating a system of public schools in Dougherty County and said Board is presently operating such public schools in the County.

The Court has jurisdiction of this litigation pursuant to the provisions of § 1343(3) of Title 28 of the United States Code, this being a suit in equity authorized under the provisions of § 1983 of Title 42 of the United States Code, it being alleged that the rights sought to be secured by this action are of the nature which are guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution.

There are approximately 20,000 students in the Dougherty County School system and of these approximately 12,600 are white students and approximately 7,400 are Negro students, the system being about 63% white and 37% Negro. For many years past and at present the Defendants have operated the school system as a dual educational system under which all white students attend schools separate and apart from Negro students and Negro students attend schools separate and apart from white students. All of the teachers who teach in the white schools are white and all of the teachers who teach in the Negro schools are Negroes. All of the teachers, both white and Negro, are paid the same basic salary as related to their education and experience. The training and qualifications of the Negro teachers and the white teachers is about the same. There are six specially trained teachers for retarded or exceptional children in the white schools and four in the Negro schools. There is one white visiting teacher and one Negro visiting teacher. The pupil-teacher ratio is a little lower in the Negro schools than it is in the white schools, there being on the average about one less in number of pupils per teacher in the Negro schools than in the white

schools. Generally the curriculum is the same in the Negro schools and the white schools, there being some minor variations which are related to the desires of the students. There is one qualified librarian assigned to the white schools and one qualified librarian assigned to the Negro schools. There are two vocational schools. These schools are ungraded. One of these schools is attended exclusively by Negro children and the other is attended exclusively by white children. School zones or attendance areas are established and maintained separately for the Negro schools and for the white schools, and from an administrative standpoint there is one supervisor or coordinator for the white elementary schools and there is one supervisor or coordinator for the Negro elementary schools.

The school budget is not set up or administered on the basis of race. The annual budget is established and administered on the basis of the total number of pupils in the entire school system of the county without regard to race, there being no disparity or difference between the budget as it pertains to the white race or the Negro race. All instructional supplies, textbooks, equipment, etc., needed to operate the schools are purchased from funds provided in the budget and the same amount of money per student is spent by the Board of Education for the education of Negro students as is spent for the education of white students. Generally school facilities have been provided for the two races on an equal basis. In fact, in some instances the provisions for Negro pupils have been superior to that for whites, as is evidenced by the fact that the only air conditioned school in Dougherty County is a Negro school and this is one of the few air conditioned schools in the State of Georgia.

No Negro parent has ever appeared before the Board of Education and complained about the dual system that is operated. No Negro parent or child has ever appeared before the Board and sought to discuss the matter with the Board. No Negro parent or Negro student has ever made a written application to the Defendants requesting a transfer from an all-Negro school to an all-white school. No Negro parent or Negro student has ever appeared before the Board at the time of any Board meeting and orally requested a transfer from an all-Negro school to an all-white school.

All students, Negro and white, in the Dougherty County school system were assigned to designated schools for the 1962–63 school term in May, 1962, this being normal procedure. Between May, 1962 and the opening day of school in September, 1962 no complaint was made by any person to the Defendants concerning such assignments which had been made the previous May. On the opening day of school in September, 1962 a number of Negro parents and Negro children appeared at white schools and requested admittance to such schools. Such admittance was refused.

In the latter part of January, 1963 one of the attorneys representing the Plaintiffs in this action communicated by letter with the Dougherty County Board of Education requesting the Board to reorganize the dual school system into a unitary non-racial system. Attached to the communication was a petition signed by eleven Negro parents of school-age children requesting the reorganization. The Dougherty County Board of Education did not reply to this communication.

Assignment of pupils for the school year beginning September, 1963 were made in May, 1963 and white pupils have been assigned to white schools and Negro pupils have been assigned to Negro schools as in the years past. Since these assignments were made no application for transfer or complaint concerning school assignments has been made to the Defendants. Teacher contracts are ordinarily entered into in May of each year for the forthcoming school year beginning in September and such contracts were entered into in May, 1963 for the coming school year and assignments for teachers have already been made. No Negro teacher has at any time registered

a complaint with the Board concerning teacher assignments nor has any Negro teacher registered a complaint with the Defendants concerning the operation of the pupil schools in Dougherty County.

Textbooks, work books and instruction supplies for all of the schools have already been ordered for the coming year based upon the assignments that have been made. Some of the schools are presently overcrowded and there are four school buildings under construction at the present time, but they will not be completed in time for use at the beginning of the 1963 school year.

In recent months the subject of desegregation of the school system has been discussed at length at meetings of the Defendant Board of Education, but at the time of the hearing in this matter no definite action had been taken in that direction.

■ It is obvious from the foregoing that the Dougherty County Board of Education has sought in good faith to provide adequate educational facilities for all of the children of all races in Dougherty County in a manner sincerely deemed by them to be best, but it is likewise obvious that their ideas of proper school administration do not coincide with those expressed by the Supreme Court of the United States, for the Defendants are operating a racially segregated school system and the Supreme Court of the United States has held in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and subsequent cases, that to do so is in violation of the constitutional rights of the Plaintiffs. This Court is bound by that Court's decree. It is the duty of this Court in these circumstances to order an end to the segregated system. This we will do.

It is clear that it is in the best interest of all concerned, the Plaintiffs, the Defendants and the general community, that this change be brought about in an orderly fashion. The Defendants have assured the Court that they will in good faith abide by any order which the Court

might enter. However, any peremptory order issued by the Court would of necessity be haphazard and probably ill-conceived. The better approach is for the Board to design in good faith a plan of desegregation of the public school system of Dougherty County, Georgia under which the Board will with reasonable promptness eliminate school assignments based upon race. The Defendants are required to do this and will submit such plan to the Court for approval or disapproval within thirty days from the date of the filing of this opinion. At the same time the Defendants will furnish a copy of the proposed plan to Counsel for the Plaintiffs, and the Plaintiffs will within ten days thereafter file written objections thereto, if there be any. If written objections to the plan as submitted are filed by the Plaintiffs the Court will promptly set the matter down for hearing.

■ Since we are requiring a prompt submission of a desegregation plan we see no necessity at this time for the granting of a temporary injunction as requested by the Plaintiffs.

The Court is not at this time ruling on the question of assignment of teachers and other professional personnel.

The Court retains jurisdiction of this matter for further proceedings and the entry of such further orders as may be deemed appropriate in the light of the developing circumstances.

It is so ordered this 12th day of July, 1963.

### Supplemental Opinion.

In this class action brought by members of the Negro race seeking to enjoin the school authorities in Dougherty County, Georgia, in which is located the City of Albany, Georgia, from operating a bi-racial school system, this Court on July 12, 1963 directed the Board to design and submit a plan under which the said Board would with reasonable promptness eliminate school assignments based upon race. This plan was to be submitted within thirty days of the date of the Court's order. Such a plan was

submitted within the time prescribed and when the Plaintiffs made certain objections to the plan further hearing was had with regard to the matter and we now have for determination the question whether the plan submitted is adequate for the purpose intended. This opinion is intended as being supplemental to our previous opinion dated July 12, 1963 and all of our findings previously made with respect to factual matters are incorporated herein by reference.

■ In testing the plan submitted we should remind ourselves of a fact seemingly often overlooked by those who are anxious for rapid social change, this being that the chief function and primary concern of the Board of Education is not the preservation of the status quo in race relations, nor is it the advancement of social revolution. The Board's primary duty is to provide good educational facilities and operate them in an orderly manner and in an atmosphere free from turmoil and tension. While it is this Court's duty to order an end to the segregated system, which we have done, we deem it no less proper that we accord to the local school authorities superior knowledge with respect to the mechanics of a plan and the timing of its effectiveness.

■ The plan submitted by the Board is similar to plans which have been heretofore approved by other district courts and by the appellate courts upon review. It provides for the desegregation of the first grade beginning with the school term September, 1964 and it will thereafter become effective step by step for one additional grade each year, thus extending through the second grade in 1965, through the third grade in 1966, etc. It is provided that the first registration under the plan shall take place in April, 1964 and that students who will be entering the first grade in September, 1964 will be registered by their parent or guardian at the school which the student desires to attend, regardless of whether that school may have previously been a school designated as a Negro school or whether it may have been previously designated as a white school. In other words, the student may select the school of his choice without regard to race or color and if other basic considerations which are uniformly applied in assigning all students to all schools permit, the student will be assigned to the school of his choice. These are the basic considerations: the student's proximity to the school, the building capacity, and any unusual transportation problems which might be involved. It is anticipated that the normal net effect will be that pupils will attend the school located nearest their residence.

■ Counsel for the Plaintiffs have criticized the plan as being an "illusion", suggesting that this freedom to register in the school of the pupil's choice is not bona fide and that those responsible for assigning the pupils will hide behind a pretense of lack of building capacity, absence of proximity and fictitious transportation problems as justification for refusing to assign Negro pupils to the school of their choice. In other words, we are asked to simply presume that the members of the Board have submitted the plan hypocritically and in bad faith. Let us consider this.

Anyone who has ever had any occasion to have any knowledge concerning the practicalities of the administration of a public school system is aware that in determining the school to which the particular pupils should be assigned it is necessary to consider the proximity of a child to a school to be attended, the physical capacity of the building which houses the school, and economical transportation arrangements in getting the children to school if they are to be transported. If these basic considerations were not taken into account there could be chaos in the operation of the system because one school might be hopelessly overloaded and another school might be used hardly at all. It is not new for the Dougherty County Board of Education to take these things into consideration. They have always done so. In addition, they have heretofore taken into consideration the race of the pupil. So, under

this plan the consideration of race will be entirely eliminated, but the other three basic factors will still be considered as they should and must be. During the course of the hearing the following questions were propounded to the Superintendent of Education by the Court and the following answers were given in response:

"THE COURT: Mr. Cordell, I presume you are not only familiar with the things that are taken into consideration in the Dougherty County school system in assigning pupils to particular schools, but I presume, because of the fact that you have been connected with other school systems in the past and have some familiarity with other school systems, that you know generally what is taken into consideration in most school systems in deciding to which school a pupil is to be assigned, don't you?

"MR. CORDELL: Yes, sir.

"THE COURT: You generally are familiar with that?

"MR. CORDELL: Yes sir.

"THE COURT: And isn't it generally true— * * * that in most school systems that, in assigning a pupil to a school, you take into consideration the proximity to the school, the building capacity and the transportation problem that may be involved? Aren't those the three things that are generally taken into consideration?

"MR. CORDELL: Yes sir.

"THE COURT: Now, here in Albany, you have taken into consideration another thing, you have heretofore taken into consideration a fourth thing, and that is race?

"MR. CORDELL: Yes.

"THE COURT: That's what you've done and that is what is here complained about. So, heretofore you have taken into consideration proximity to schools, building capacity and transportation problems and race?

"MR. CORDELL: Yes.

"THE COURT: Now, as I understand your plan, what you propose to do, is you propose to eliminate that item of race?

"MR. CORDELL: That's right.

"THE COURT: You propose to continue to take into consideration the matter of proximity to schools, building capacity and transportation problems?

"MR. CORDELL: That's right.

"THE COURT: And you intend to take that into consideration with regard to white students who apply to go to some particular school, or with regard to Negro students who apply to go to some particular school?

"MR. CORDELL: Yes.

"THE COURT: You intend to take those three things into consideration?

"MR. CORDELL: That's right.

"THE COURT: Is that true?

"MR. CORDELL: Yes sir.

"THE COURT: But do I understand that you do not intend to take into consideration in any manner, either directly or indirectly, the question of the race of the student who may be applying to be assigned to some particular school?

"MR. CORDELL: That's right.

"THE COURT: Have I stated it accurately?

"MR. CORDELL: Accurately, yes sir.

"THE COURT: Do you intend in any way—and I, of course, expect a good faith answer to this question, just as I am presuming that the plan has been submitted in good faith—do you intend in any way to instruct or suggest or coerce or in any way cause who-

ever passes upon these applications for admission to a particular school, to use the matter of proximity, or the matter of building capacity or the matter of transportation problem, as a subterfuge for taking into consideration the question of race?

"MR. CORDELL: No sir.

"THE COURT: Do you intend to apply the tests of proximity to school, building capacity and transportation furnished to all alike, without discrimination with regard to race?

"MR. CORDELL: Yes sir.

"THE COURT: And that is a good faith answer to the Court's question?

"MR. CORDELL: Absolutely."

The Court believes that Mr. Cordell, Superintendent of Education, is an honorable man. The Court is also impressed that the members of the Board of Education, all of whom were present at the hearing, are men of integrity who submitted this plan in good faith and that the plan will be administered as indicated by the Superintendent. If it develops that the plan is not fairly administered this will be readily detected and easily remedied.

■ Another contention of counsel for Plaintiffs is that there is no guarantee under this plan that there will be any actual integration of the races in the first grade in the year 1964, counsel pointing out that there is no assurance that any Negro child will choose to register at what has previously been an all-white school. We do not deem it the duty of the Board of Education to enforce integration. We do deem it their duty not to enforce segregation. By making it possible for children of both races to choose the school which they prefer to attend and by assigning the pupils to the schools without regard to racial consideration the Board will have discharged their duty.

■ The Plaintiffs also urge that the plan should be put in effect beginning with the school year which starts in September, 1963, which would be only six days hence. In this connection it is noted that the assignment of pupils for the school year beginning next week were made in May, 1963 and since these assignments were made there has been no application for transfer or complaint concerning school assignments. Teacher contracts for this year were entered into in May, 1963 and all teachers have already been assigned. Since these assignments have been made there have been no complaints with respect to them. All textbooks, work books and instruction supplies for all the schools are already on hand and distribution has been planned for this year based upon the assignment of pupils already made. Some of the schools are presently overcrowded and there are four school buildings under construction at the present time, but they will not be completed in time for use in the beginning of the 1963 school year. The Defendant Board of Education points out that many administrative problems would be created if the Board is required to put the plan into effect next week, and in addition to the administrative problems, they urge that some time is needed to prepare the community for the change. This Court understands the Board's problem and has intimate knowledge of the community circumstances involving race to which the Board refers. The people of all races residing in Albany and Dougherty County, Georgia have been abused by agitators, castigated by commentators and larruped by litigators to a degree unprecedented. A surcease from sensation is what is desired by the great majority of the community's citizens, both white and Negro, who have the best interests of the community at heart, and in this day of quiet improvement the last thing that is needed is a precipitate rake of the judicial claw over racial wounds only partially healed. Everything considered, we are convinced that for us to order any degree of desegregation into effect by September 3, 1963 would be at variance with the concept of "deliberate

speed" and would be a rash act causing unnecessary confusion in the administration of the schools to the injury of all pupils in the system, white and Negro.

We find the plan submitted to be reasonable and adequate to accomplish the desired results. We believe that it has been submitted in good faith and that all persons responsible for the administration of the plan will readily abide the orders of this Court. The plan is approved and will go into operation as scheduled. We are not at this time ruling on the question of assignment of teachers and administrative personnel, as originally suggested by Plaintiff's complaint, nor are we dealing at this time with the question of the vocational schools which are ungraded, but in which the minimum age requirement is sixteen years. These are matters which will be an appropriate subject of the Court's attention when the plan for assignment of pupils without regard to race has progressed to an extent that would justify further consideration of these features.

Only one further thing need possibly be said. It was suggested by counsel in oral argument that the nominal Plaintiffs in this case who are of various ages and in various grades in the schools should be admitted to the schools next week as exceptions to the desegregation plan. The Court is of the opinion that to grant such exceptions would have the effect of inviting the destruction of the very plan which the Court has held is reasonable and adequate for the school system of Dougherty County. The plan which we approve is designed to bring about an orderly and effective transition from a racially segregated system to a racially non-segregated system, taking into account the conditions which exist in the community. The nominal Plaintiffs brought this action as a class action and they would not simply by virtue of the use of their names be entitled to any different treatment from that accorded any other children who attend the schools of Dougherty County and who are members of the class which they represent. To give them special status would not

only accord them unwarranted preferential treatment, but would in fact destroy the plan which we have just approved.

The Court retains jurisdiction of this matter for further proceedings and the entry of such further orders as may be deemed appropriate in the light of developing circumstances.

It is so ordered, this 27th day of August, 1963.