Shirley GAINES et al., Plaintiffs,

v.

DOUGHERTY COUNTY BOARD OF
EDUCATION et al., Defendants.

Civ. A. No. 764.

United States District Court,
M. D. Georgia,
Albany Division.

May 2, 1980.

C. B. King, Herbert E. Phipps, Peter Zack
Geer, Albany, Ga., for plaintiffs.

Jesse W. Walters, Albany, Ga., for de-
fendants.

OWENS, District Judge:

Deciding this school case is much like
having been told as a child to take a dose of
caster oil—we knew our parents thought it
was good for us, but we nevertheless
thought the problem could have been reme-
died with something that tasted better and
didn't produce such a drastic result. Told
by the Fifth Circuit Court of Appeals in no
uncertain terms to administer another dose
of desegregation to the elementary and jun-
ior high schools of Dougherty County, this
constitutes the court's order dismantling
the remnants of Dougherty County's once
segregated public school system and creat-
ing the unitary public school system that
the Supreme Court since 1954 has repeated-
ly said is required by the Equal Protection
Clause of the Fourteenth Amendment to
the Constitution of the United States.
*Brown v. Board of Education*, 347 U.S. 483,
74 S.Ct. 686, 98 L.Ed. 873 (1954).

In describing what is required to carry
out the constitutional mandate of *Brown v.
Board of Education*, the Supreme Court in
its second decision in that same case stated:

Full implementation of these constitu-
tional principles may require solution of
varied local school problems. School au-
thorities have the primary responsibility
for elucidating, assessing, and solving
these problems; courts will have to con-
sider whether the action of school author-
ities constitutes good faith implementa-
tion of the governing constitutional prin-
ciples. Because of their proximity to
local conditions and the possible need for
further hearings, the courts which origi-
nally heard these cases can best perform
the judicial appraisal.

*Brown*, 349 U.S. 294 at 299, 75 S.Ct. 753 at
756, 99 L.Ed. 1083 at 1105. Consistent with
that decision and pursuant to the order of
the Fifth Circuit Court of Appeals, the de-
fendant Dougherty County Board of Educa-
tion and each plaintiff class was ordered by
this court on January 9, 1980, "to prepare
and submit a written plan to further deseg-
regate the public schools of Dougherty
County, Georgia. The written plan shall
comply with the said January 7, 1980, order
of the Fifth Circuit Court of Appeals and
shall include specific geographical attend-
ance zones for each of the elementary and
junior high schools of the defendant school
system . . . ."

The said January 7, 1980, order of the Fifth Circuit Court of Appeals, 609 F.2d 225, stated:

The sole issue on appeal is whether the district court erred in failing to require the implementation of an elementary and junior high desegregation plan for the Dougherty County school district in accordance with this court's mandate in *Gaines* [*v. Dougherty County Bd. of Education,* 465 F.2d 363 (5th Cir. 1972)].

The Dougherty County Board of Education claims this mandate has been complied with and that the school system of Dougherty County is fully integrated. It contends that the staff of each school, the administrative staff of the school system, the transportation system and extracurricular activities are all integrated and that school facilities are comparable.

The unchallenged statistics presented by the appellants and set forth in the attached Appendix clearly show that the school system is not integrated. As the appellants point out:

[I]n a system with an overall pupil ratio of approximately 50% white and 50% Black, only one of seven junior highs and 2 of 22 elementary schools are close to that ratio. One junior high and 2 elementary schools are 100% Black. One other junior high school is between 80% to 90% Black. Of the elementary schools, three are more than 90% Black, three are between 80%–90% Black, four are more than 90% white, and three are between 80%–90% white. In other words, 2 of 7 junior high and 17 of 22 elementary schools are grossly disproportionately of one race. (Appellants' Brief pp. 7–8).

To date, despite appellants' repeated efforts, this court's 1972 mandate requiring the submission of a school desegregation plan has not been complied with as relates to the junior high and elementary schools in Dougherty County. No new plan has been ordered and the district court has not explained its failure to so order except to refer to opposition to desegregation in the community, a reason held to be invalid in *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).

Certainly important strides have been made in integrating the high schools and teaching and administrative staffs of this school system. Nevertheless, integration as mandated by the 1972 decision of this court means integration of the total school system, not some of its component parts.

*We reverse and order the district court to adopt a plan for the desegregation of the elementary and junior high schools* in the Dougherty County School System within sixty days from the entry of this order. *Under the plan adopted, no school shall deviate by more than 25% from the 50%–50% white-black student ratio throughout the system.*

\*   \*   \*   \*   \*   \*

*We order the school board to put the adopted desegregation plan into effect* in all of the junior high and elementary schools as soon as possible but *no later than August of 1980—the beginning of the 1980 school term.* (emphasis added).

The defendant Dougherty County Board of Education and each plaintiff class submitted plans which if adopted would result in no elementary or junior high school's student body deviating "by more than 25% from the 50%–50% white-black student ratio throughout the system." On April 1 and 2 at a hearing held in Albany the parties presented evidence in support of those plans. A transcript of that hearing is now being prepared by the court reporter.

Each of the proposed plans has been carefully examined and considered by the court in the light of the evidence and argument of counsel.

Black plaintiffs propose changing the system's twenty-one elementary schools so that grades K–3 or 1–3 will be taught at Jackson Heights, Lake Park, Madison, M. L. King, Jr., Morningside, Radium Springs, Sherwood, and Sylvandale; grades K, 4–6 or 4–6 will be taught at Coachman, Flintside, Highland, Lincoln Heights, Mock Road, Northside, Palmyra, and Sylvester

Road; and grades K–6 or 1–6 will be taught at Isabella, Magnolia, Mamie Brosnan, Turner, and West Town. The K–3 or 1–3 schools would then be paired with the K, 4–6 or 4–6 schools while the K–6 or 1–6 schools would not be paired since they already have integrated student bodies; their attendance zones would be altered. As an illustration of the pairing concept, this plan would send students now attending Lake Park and Lincoln Heights to Lake Park for grades 1–3, and to Lincoln Heights for grades 4–6; all Lincoln Heights' students would be bused for grades 1–3 to Lake Park and all Lake Park students would be bused for grades 4–6 to Lincoln Heights. The plan of the black plaintiffs for the junior high schools suggests only that attendance zones be altered to send children from one zone to another in sufficient quantity to create the required ± 25% racial mix; no specific changes in zones are suggested. According to black plaintiffs' educational expert, even though this plan results in the same degree of integration as the plans of the school board and the white plaintiffs, it is superior because it is simplistic or easier to grasp and because it not only creates a racially mixed school system but also furthers the "American dream" of a racially mixed society of adults and children.

White plaintiffs' plan proposes a combination of pairing elementary schools and transporting randomly selected students from one elementary school district to another. For junior high schools the present high school zones would be utilized to cause students living within each high school zone to attend junior high school within that zone. Where more than one junior high school serves a zone, each school would be assigned all students for particular grades. To illustrate—Merry Acres and M. L. King are both in the present Westover High zone; Merry Acres would teach all 8th and 9th grades and M. L. King would teach all 7th grades. Radium Springs and Southside are both in the present Monroe High zone; Radium Springs would teach all 8th and 9th grades and Southside would teach all 7th grades.

Defendant Board of Education's plan for the elementary schools closes Madison; assigns grades K–5 to nine schools—Coachman, Lake Park, Mamie Brosnan, M. L. King, Northside, Palmyra, Radium Springs, Sherwood and West Town; makes Lincoln and Morningside 6th grade centers; pairs six schools—Flintside and Sylvester Road, Highland and Magnolia, Jackson Heights and Sylvandale; and leaves Mock Road and Turner with grades K–6. Zones are realigned and split to achieve the required mix. For the junior high schools the attendance zones are changed to create the required racial mix.

Each of the plans requires more pupil transportation and greater expense to the state and local taxpayers, most of whom do not realize they are already paying to transport some 9,962 Dougherty County students to and from school every day on account of Georgia's state law which requires every child living more than 1.5 miles from school to be furnished transportation. Comparing one to the other, the plans of the plaintiffs each require the transportation of substantially greater number of students over a longer distance than the defendant school board's plan which requires the least transportation of additional students for shorter distances.

Told to "adopt either plan submitted or its own plan," this court must now choose between these plans or devise its own plan. In doing so this court is mindful:

—of the admonition that in devising plans for the operation of public schools "most judges [including in particular this judge] do not have sufficient competence— they are not educators or school administrators—to know the right questions much less the right answers."[1]

—that "we are concerned in these cases with the elimination of the discrimination inherent in the dual school systems, not with myriad factors of human existence which can cause discrimination in a multitude of ways on racial, religious, or ethnic

---

1. *United States v. Jefferson County Board of Education*, 372 F.2d 836 (5th Cir. 1966).

grounds. The target of the cases from *Brown I* to the present was the dual school system. *The elimination of racial discrimination in public schools is a large task and one that should not be retarded by efforts to achieve broader purposes lying beyond the jurisdiction of school authorities.* One vehicle can carry only a limited amount of baggage. It would not serve the important objective of *Brown I* to seek to use school desegregation cases for purposes beyond their scope, although desegregation of schools ultimately will have impact on other forms of discrimination." [2]

—that "in choosing among plans each of which satisfy the constitutional requirements for desegregation, the courts must strive to keep abrasions and dislocations to a minimum." [3]

—that the defendant School Board has the primary responsibility of preparing and submitting an effective desegregation plan. Then "it is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress . . It is incumbent upon the district court to weigh that claim in light of the facts at hand and in light of any alternatives which may be shown as feasible and more promising in their effectiveness. Where the court finds the board to be acting in good faith and the proposed plan to have real prospects for dismantling the state-imposed dual system 'at the earliest practicable date,' then the plan may be said to provide effective relief. . . . " [4]

—that school board plans providing effective relief should be preferred over equally effective plans submitted by private parties in recognition of the fact that private parties and outside educational experts, like judges, do not possess the real expertise that local school board members, school administrators and educators have gained from education, training, and actual daily experience in operating these public schools over many, many years.

The defendant school board's plan having been carefully examined in the light of these factors and the decisions of the Supreme Court and Fifth Circuit Court of Appeals, it is this court's considered judgment that:

—the defendant School Board's plan if implemented for the 1980–81 school year, will result in no elementary or junior high school's student body deviating by more than 25% from the 50%–50% white-black student ratio that now exists throughout this school system.

—the defendant Dougherty County Board of Education is acting in good faith.

—the defendant Board's plan has real prospects for dismantling the remnants of this formerly dual school system.

—the plans of the black and white plaintiffs achieve the same result but in a manner that requires substantially greater transportation of students.

—the defendant School Board plan compared to the plans of the black and white plaintiffs, keeps abrasions and dislocations to a minimum.

—the defendant School Board's plan satisfies constitutional requirements and is to be preferred over the plans of the black and white plaintiffs.

Accordingly, the defendant Dougherty County Board of Education is ORDERED to implement its plan for assigning students to the elementary and junior high schools of Dougherty County as of the beginning of the 1980–81 school year.

The parties are directed within thirty (30) days to submit a proposed form of final decree incorporating therein this order, the previous order assigning students to the defendant's high schools and suggested dispositions of all remaining issues including but not limited to future reporting require-

---

**2.** *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1 at 22–23, 91 S.Ct. 1267 at 1279, 28 L.Ed.2d 554 (1971) (emphasis added).

**3.** *Lemon v. Bossier Parish School Bd.*, 566 F.2d 985, 989 (5th Cir. 1978).

**4.** *Green v. School Board of New Kent County*, 391 U.S. 430 at 439, 88 S.Ct. 1689 at 1695, 20 L.Ed.2d 716 (1968).

ments, control over future construction and changes, assignment of administrative and teaching personnel, equalization of physical facilities and providing a quality education to every child who attends these schools. In doing so the defendant board of education is invited to investigate the magnet school concept and to determine whether or not the utilization of that concept would make its plan herein found effective, an even more effective plan for educating Dougherty County's school children.

Every parent and child continues to have an interest in these schools and should therefore be able to read this order in its entirety. To enable them to do so the Clerk shall cause a copy of this order to be published in the Albany Herald and the expenses thereof to be billed as costs to the defendant Board of Education.