Shirley GAINES, et al.,
Plaintiffs-Appellants,

v.

DOUGHERTY COUNTY BOARD OF
EDUCATION, et al.,
Defendants-Appellees.

No. 84–8450.

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1985.

C.B. King, Albany, Ga., Charles Stephen Ralston, New York City, for plaintiffs-appellants.

J.W. Walters, County Atty., Albany, Ga., for defendants-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

PER CURIAM:

We are nearing, hopefully, the end of a twenty-three-year saga culminating in the desegregation of schools in Dougherty County, Georgia. At issue today is the proper calculation of attorneys' fees under 42 U.S.C. § 1988 (1982).

## I.

This case was initiated in 1963 to bring an end to the *de jure* segregation of the Dougherty County school system.[1] When the district court granted the plaintiffs only limited relief, they appealed to this court,[2] which directed the district court to accelerate the desegregation of the school system. 329 F.2d 823 (5th Cir.1964); 334 F.2d 983 (5th Cir.1964). Following a series of delays, the district court entered an order approving a desegregation plan. This court, on appeal, reversed, however, finding that the plan failed to comply with the requirements of *United States v. Jefferson County School Board,* 372 F.2d 836 (5th Cir.1966), *aff'd en banc,* 380 F.2d 385 (5th Cir.), *cert. denied,* 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 and 389 U.S. 840, 88 S.Ct. 77, 19 L.Ed.2d 104 (1967). 392 F.2d 669 (5th Cir.1968). On remand, the district court approved an alternative plan. Again, the plaintiffs appealed, and again we remanded the case to the district court, this time with instructions to comply with *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). 442 F.2d 1344 (5th Cir.1971). The Dougherty County School Board thereafter prepared a revised desegregation plan. The plaintiffs, in July 1971, objected to this plan, contending that it did not conform to the dictates of *Swann.* They also moved the court to award them attorneys' fees for the work their attorneys had performed up to that time. The district court overruled plaintiffs' objection to the Board's plan and denied their motion for fees, and the plaintiffs appealed. Once again we reversed. We instructed the district court on remand to consider a plan submitted by the Department of Health, Education, and Welfare (HEW). 446 F.2d 907 (5th Cir.1971). The panel's opinion made no reference to the attorneys' fees issue. The district court, over plaintiffs' objection, adopted HEW's plan which left a number of one-race schools. At the same time, the court denied the plaintiffs' application for attorneys' fees. The plaintiffs appealed from both rulings, and again this court reversed, remanding the case with specific instructions that the district court enter a new plan.[3] As before, we were silent as to the district court's denial of attorneys' fees. 465 F.2d 363 (5th Cir. 1972).

Upon remand, the plaintiffs sought the immediate implementation of our mandate. The case, however, had been reassigned to a new judge, and he advised the parties that he needed some time to review the file. When after several months he took no action, the plaintiffs renewed their effort to obtain compliance with our mandate. They retained an expert and submitted their own desegregation plan to the court, requesting its implementation. The district court rejected the plan and appointed a panel of experts to draft a plan desegregating all of the schools in Dougherty County. Finally, in 1979, the court ordered the limited desegregation of the county's high schools.

Plaintiffs promptly appealed. We vacated the district court's order and directed

---

1. For a more thorough history of this protracted litigation, see 329 F.2d 823 (5th Cir.1964); 334 F.2d 983 (5th Cir.1964); 392 F.2d 669 (5th Cir. 1968); 442 F.2d 1344 (5th Cir.1971); 446 F.2d 907 (5th Cir.1971); 465 F.2d 363 (5th Cir.1972); 609 F.2d 225 (5th Cir.1980); *see also* 222 F.Supp. 166 (M.D.Ga.1963); 489 F.Supp. 778 (M.D.Ga. 1980).

2. Although prior appeals were made to the Fifth Circuit, we will refer to our predecessor court as "this court" for the purposes of this present appeal.

3. Although we found that the district judge "faithfully complied" with our earlier mandate to consider the HEW plan, we viewed the plan in actual practice as not effectively desegregating a substantial number of schools in the Dougherty County school system. 465 F.2d at 364.

the court immediately to enter a comprehensive desegregation order that would bring about the desegregation of all schools in the county, within reasonable time limits. At that time we noted that the district court had delayed carrying out our 1972 mandate for seven years despite the plaintiffs' repeated efforts. 609 F.2d 225, 226 (5th Cir.1980). The district court thereafter complied with our mandate and implemented a comprehensive plan of desegregation in time for the 1980–1981 school year.

Following the district court's entry of this desegregation plan, the plaintiffs moved the court to award them attorneys' fees under 42 U.S.C. § 1988 (1982)[4] for all of the work their lawyers had done in the case up to that time, an eighteen-year period extending from the commencement of the suit in 1963 to the entry of the final desegregation plan. The total fees requested were $143,940.75, representing 1,066.55 hours of work.[5] Plaintiffs contended that their local counsel should be compensated on the basis of the hourly rates currently in effect in Albany, Georgia,[6] in order to account for the delay in payment.[7] The district court, on May 11, 1984, 586 F.Supp. 1324, awarded plaintiffs $50,736.34.[8] It ruled that no fees could be recovered for the eight years prior to 1971 because previous opinions of this court, handed down in 1971 and 1972, 446 F.2d 907 (5th Cir.1971); 465 F.2d 363 (5th Cir. 1972), had implicitly affirmed the district court's earlier denials of such awards. In addition, the court reduced the amount it might otherwise have awarded plaintiffs because the records of their attorneys were inadequate to enable the court to determine

4. 42 U.S.C. § 1988 provides:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The plaintiffs also relied upon 20 U.S.C. § 1617 (1976) which became effective in 1972 and authorized a federal court to award reasonable attorneys' fees in school desegregation cases where a final order had been entered, the litigation was necessary to bring about the school district's compliance with the law, and the party receiving the award was the prevailing party. The statute, however, was repealed effective September 30, 1979. Act of Nov. 1, 1978, Pub.L. No. 95–561, tit. VI, § 617(10)(b)(2), 92 Stat. 2143, 2268. There may be an issue as to the effect of the repeal upon the attorneys' fees plaintiffs incurred in this case prior to September 30, 1979. (In *Bradley v. School Board,* 416 U.S. 696, 724, 94 S.Ct. 2006, 2022, 40 L.Ed.2d 476 (1974), the Supreme Court applied section 1617 to all cases pending before a court in 1972). We decline to address this issue, however, as the plaintiffs may properly rely on section 1988, which does not differ significantly from section 1617 as regards the awarding of attorneys' fees in cases such as this. *See Northcross v. Board of Education,* 611 F.2d 624, 632 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 682 (1980).

5. A small number of additional hours were requested after a hearing on the attorneys' fees issue on June 28, 1983.

6. Plaintiffs sought attorneys' fees at current New York City hourly rates for one of their lawyers who regularly practiced in New York City.

7. Hourly rates requested for the three attorneys involved in the case were $165, $150, and $100. Plaintiffs sought to discover through written interrogatories the amount of fees the School Board paid its attorneys, but the district court refused to require the Board to divulge such information.

8. Of this award, $5,140.84 represented the plaintiffs' costs and litigation expenses after September 3, 1971.

whether there had been any unnecessary duplication of effort. The court effected this reduction by employing hourly rates much lower than those requested by the plaintiffs.[9]

The plaintiffs now appeal the district court's fee award. They argue that our earlier decisions did not address the issue of attorneys' fees and therefore did not preclude an award for the fees incurred prior to 1971. In addition, they argue that the district court erred in refusing to compel the School Board to disclose the number of hours spent by its attorneys in preparing the defense and the legal fees it incurred in defending the case, and in setting and reducing for inadequate records the hourly rates it used to calculate the fees. Finally, plaintiffs argue that the district court's award failed adequately to account for the delay in payment. We agree with the plaintiffs that the award should have included legal fees incurred prior to 1971. Because we are unable to determine from the district court's dispositive opinion the unadjusted hourly rates the court employed and how the court adjusted these rates to account for counsel's inadequate records and the delay in payment, we remand the case to the district court for further findings.

## II.

The district court interpreted our 1971 and 1972 decisions as implicitly affirming its denial of attorneys' fees. Applying the law of the case doctrine, the court refused to award fees for work incurred prior to 1971. We do not so interpret our earlier decisions.

 The law of the case doctrine is "an amorphous concept." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). It is clear, however, that a decision of an appellate court at an earlier stage of the same proceedings represents the law of the case. *Joshi v. Florida State University Health Center*, 763 F.2d 1227, 1231–32 (11th Cir.

1985); *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir.1985); *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir.1984). As we have noted before,

> [t]he "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigate anew in the same case upon any and every subsequent appeal" thereof.

*White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967) (footnotes omitted).[10] The doctrine of the law of the case, however, "comes into play only with respect to issues previously determined," *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979), although the doctrine applies to issues decided by necessary implication as well as those decided explicitly. *Piambino*, 757 F.2d at 1120; *Wheeler*, 746 F.2d at 1440; *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir.), *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974); 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.404[10] (2d ed. 1984).

Our 1971 and 1972 decisions did not affirm the district court's denial of attorneys' fees. In both instances desegregation plans approved by the district court were reviewed by this court in light of *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), and rejected. 446 F.2d at 907; 465 F.2d at 364. Neither decision discussed the trial court's denial of attorneys' fees; the focus of each decision was

---

**9.** The hourly rates used were $75, $65, and $50.

**10.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

on the approved plan itself. This is not surprising given that such appeals were expedited, as provided by *Singleton v. Jackson Municipal Separate School District,* 426 F.2d 1364, 1365 n. 3 (5th Cir.), *modified on other grounds,* 430 F.2d 368 (5th Cir.1970) (per curiam), *cert. denied,* 402 U.S. 944, 91 S.Ct. 1611, 29 L.Ed.2d 112 (1971), and promptly decided so as to provide an acceptable desegregation plan prior to the beginning of the school year. Nor does either of our opinions necessarily imply an affirmance of the trial court's denial of attorneys' fees. An evaluation of a desegregation plan may certainly be made independently of the determination of an attorneys' fee issue.

Thus, this court did not affirm the district court's denial of attorneys' fees. Rather, our 1971 and 1972 opinions are better read as vacating the district court's rulings on attorneys' fees, thereby postponing our review of the issue until such time as an acceptable desegregation plan was implemented. Such an appellate disposition would enable us to deal with the attorneys' fees issue at one time, rather than examining the issue several times over various stages of the litigation.

▆▆▆▆ Even were we to view our earlier decisions as affirming the district court's refusal to award attorneys' fees, the doctrine of the law of the case would not necessarily preclude recovery of such fees in the particular situation at hand. We have previously held that the law of the case doctrine does not apply to bar reconsideration of an issue when controlling authority has since made a contrary decision of law applicable to that issue. *United States v. Robinson,* 690 F.2d 869, 872 (11th Cir.1982); *see also Piambino,* 757 F.2d at 1120; *Westbrook v. Zant,* 743 F.2d 764, 768–69 (11th Cir.1984). At the time of the 1971 and 1972 decisions, plaintiffs' attorneys' fees were not recoverable absent a showing that the School Board had acted obdurately and obstinately in failing to adopt an acceptable desegregation plan. *See Johnson v. Combs,* 471 F.2d 84, 87 & n. 4 (5th Cir.1972), *cert. denied,* 413 U.S. 922, 94 S.Ct. 3063, 37 L.Ed.2d 1044 (1973); *Horton v. Lawrence County Board of Education,*

449 F.2d 793, 794 (5th Cir.1971); *Williams v. Kimbrough,* 415 F.2d 874, 875 (5th Cir.1969), *cert. denied,* 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 (1970). However, in 1976, 42 U.S.C. § 1988 became effective. Under this statute a prevailing plaintiff should recover reasonable attorneys' fees unless special circumstances render an award unjust. *Doe v. Busbee,* 684 F.2d 1375, 1378 (11th Cir.1982); *Robinson v. Kimbrough,* 652 F.2d 458, 464 (5th Cir. 1981); *Morrow v. Dillard,* 580 F.2d 1284, 1300 (5th Cir.1978). The statute has been held to be applicable to all cases pending prior to its enactment. *Hutto v. Finney,* 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575 n. 23, 57 L.Ed.2d 522 (1978). Thus, the law involving attorneys' fees changed substantially after our 1971 and 1972 decisions. As such, the doctrine of the law of the case would not apply even if these decisions were viewed as affirming the district court's denial of attorneys' fees.

This court was faced with a similar situation in *Robinson v. Kimbrough,* 652 F.2d 458 (5th Cir.1981). In *Robinson,* a jury discrimination case, the district court, in 1974, dismissed the plaintiffs' complaint, which included a request for attorneys' fees under section 1988. The panel reversed in part, and in remanding the case to the district court made no mention of plaintiffs' prayer for attorneys' fees. We then took the case en banc and partially vacated the district court's disposition. Like the panel, however, we were silent as to the issue of attorneys' fees. On remand, plaintiffs moved the district court for an attorneys' fees award. The court denied the motion, in part because it interpreted our previous disposition as affirming its denial of such fees. On appeal from that order, we held that the law of the case did not apply. Noting that the previous panel's decision issued three days after section 1988 came into effect, we concluded that the statute constituted a material intervening change in the law on attorneys' fees. For this reason we did not view ourselves as bound by the law of the case doctrine:

The panel opinion on plaintiffs' first appeal was issued October 22, 1976, three

days after the effective date of the Awards Act. The Act constituted a material intervening change in the law on attorneys' fees. Consequently, plaintiffs had their first opportunity to present to any court their request for attorneys' fees under the Act only after this Court's *en banc* decision in 1977.

*Robinson v. Kimbrough*, 652 F.2d at 463–64 (citations omitted). These same policy reasons require that the law of the case doctrine not be applied here, even were we

to conclude that our prior decisions affirmed the district court's denial of attorneys' fees.[11] Accordingly, we conclude that the district court abused its discretion in refusing to award plaintiffs' attorneys' fees for work performed prior to 1971.

### III.

The plaintiffs also claim that the district judge abused his discretion in employing hourly rates far below those plaintiffs requested. In addition, they contend that the

---

**11.** The district court also based its ruling that no fees should be awarded for services provided prior to 1971 on the theory that such an award would be unfair to the School Board. In September 1972, the plaintiffs moved for the immediate implementation of our 1972 mandate. Thereafter, no significant actions were taken by either side until January 1978 when the plaintiffs submitted a proposed plan for a unitary school system. The trial judge, citing *Northcross v. Board of Education*, 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 682 (1980), interpreted this period of inactivity as creating a natural break in the litigation making an award for fees incurred prior to 1971 inequitable. We disagree.

In *Northcross*, the parties signed a consent decree which resulted in a 1966 desegregation order drafted by the parties and approved by the district court. No further litigation was anticipated by either party, until *Green v. County School Board*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), was handed down, at which time the plaintiffs realized that they were entitled to a more complete desegregation plan. Plaintiffs moved for further relief and the litigation continued until 1979. In examining whether fees incurred prior to 1966 should be awarded, the Sixth Circuit cautioned that although attorneys' fees could be awarded in all cases pending at the time of section 1988's enactment, such awards were not automatic.

> This is not to say that a retroactive award of attorney's fees must be made in all school desegregation cases. Certain interim aspects of the case may have been subject to a final order settling the issue of attorney's fees to that point, rendering the reopening of long-settled aspects of the case unfair.

611 F.2d at 635. The district court on remand held that the 1966 consent decree constituted a final order, thus barring an award of attorneys' fees for services rendered prior to 1966.

The critical aspect of *Northcross* was the fact that both parties joined in a consent decree and that neither party anticipated any further litigation. This factor was emphasized by the Sixth Circuit in *Kelley v. Metropolitan County Board of Education*, 773 F.2d 677, 679–81 (6th Cir. 1985) (en banc). In *Kelley*, the district court

refused to award attorneys' fees incurred prior to a 1972 affirmance of a district court order rejecting the plans of both parties and adopting an HEW plan, because, relying on *Northcross*, it viewed the order as final. Sitting en banc, the Sixth Circuit reversed, holding that *Northcross* did not apply because the court and the parties anticipated further litigation:

> [I]t is clear that the Sixth Circuit did not view the 1971 order as signaling the termination of the litigation. Moreover, the record is replete with disclosures that the plaintiffs, as well as defendants, have continuously engaged in adversary proceedings of magnitude in conjunction with the modification and implementation of the 1970 plan with charges and countercharges of asserted disparate treatment of black children. As recently as 1982, this circuit again remanded the case, concluding that "[i]n large measure, the pupil assignment components of this plan do not withstand constitutional scrutiny." *Kelley*, 687 F.2d at 817.
>
> In view of the foregoing, it is quite apparent that the 1971 district court's disposition and this court's subsequent 1972 affirmance of that decision, did not represent a distinct break in the litigation. Accordingly, as envisioned by the Sixth Circuit in *Northcross*, an award of fees for legal services performed and accrued prior to 1972 is appropriate.

*Kelley v. Metropolitan County Board of Education*, 773 F.2d at 680–81 (footnote omitted).

In the present case the parties clearly anticipated further litigation following our 1971 and 1972 decisions. Immediately after those rulings, the plaintiffs moved for the immediate implementation of our 1972 mandate, and they renewed their motions for such relief in 1975 and again in 1976. In addition, some of the inactivity in this suit between 1972 and 1978 can be attributed to the reassignment of the case in 1975 to a new judge, who quite properly required time to familiarize himself with the history of these complicated proceedings. Given these factors we find no natural break in the case or any inequity in requiring an award of attorneys' fees for services performed prior to 1971.

judge erred in reducing the hourly rates he used to reflect their lawyers' inadequate record keeping, which made it impossible for him to determine whether there had been any unnecessary duplication of effort. Finally, they contend that the judge erred in failing to compensate for the delay in payment.[12] Because we cannot glean from the district court's order the unadjusted hourly rates it found appropriate and exactly what degree of adjustments the court made to address the inadequate records and delayed payment issues, we remand the fee issue to the district court for more specific findings.

■■■ The reasonableness of fees awarded must be reviewed under an abuse of discretion standard. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974). The Supreme Court has noted that "[t]he statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson,* 465 U.S. 886, ——,

104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (footnote omitted). Additional factors in determining a reasonable award are detailed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19.[13] The district court tracked the *Johnson* factors in its order and determined that a reasonable hourly rate of compensation for the plaintiffs' lawyers would be $75, $65, and $50. The district court stated that these figures represented the reasonable hourly rate of compensation in the relevant community, Albany, Georgia, adjusted to reflect an undisclosed degree of reduction for counsel's inadequate record keeping and an undisclosed increase for the delayed payment. For this reason, we cannot determine the reasonableness of the unadjusted hourly rates used by the district court. Further, although a district court may reduce an award where counsel's documentation of the hours he worked is inadequate, *see Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the extent to which the award has been decreased should be capable of being determined by the reviewing court. In this case,

**12.** Plaintiffs also contend that the trial judge abused his discretion by not compelling the School Board to answer interrogatories concerning the fees incurred and the hours expended by its counsel defending the lawsuit. Although we have questioned whether information concerning hours spent preparing the defense is a relevant consideration, reasoning that the hours needed by one side to prepare a case often differ substantially from the other, *see Johnson v. University College of the University of Alabama,* 706 F.2d 1205, 1208 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983), we have also held that in special circumstances it is an abuse of discretion for a judge to refuse to allow discovery of the hours spent by defense counsel. *See Henson v. Columbus Bank & Trust Co.,* 770 F.2d 1566, 1571–72 (11th Cir.1985) (trial court abused its discretion by refusing discovery of hours spent preparing a defense where litigation continued for 10 years and the judge expressed doubt as to the reasonableness of the hours claimed in plaintiff's petition for fees). In the present case the trial judge reduced plaintiffs' award because of inadequate records. We find that, given the uncertainty which prevailed concerning the number of hours claimed by plaintiffs in their fee petition, the court abused its discretion by not allowing discovery of the number of hours expended preparing the School Board's defense of the

lawsuit. The need for such information will become evident on remand when the plaintiffs will be required to provide evidence concerning hours expended prior to the enactment of 20 U.S.C. § 1617 (1976) and 42 U.S.C. § 1988 (1982), for which they quite understandably have little documentation. The court did not abuse its discretion, however, by failing to require the School Board to disclose the attorneys' fees it incurred in defending the suit, as plaintiffs had other evidence to support the hourly rates employed in their fee petition, including affidavits of local counsel concerning their hourly rates. *See Johnson,* 706 F.2d at 1208–09.

**13.** Such factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19.

the trial judge, upon finding that inadequate record keeping made it impossible to determine if an unnecessary duplication of work existed, held that the award would be reduced by lowering the hourly rates he would have otherwise utilized. The court, however, failed to indicate how much it reduced the hourly rates. In the absence of such information we are unable to determine the reasonableness of the reduction. The district court's increase of the hourly rates to reflect the delayed payment shares the same infirmity. In *Johnson v. University College of the University of Alabama*, 706 F.2d 1205, 1210–11 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983), we held that, in determining a reasonable fee, a district court must take into account the delay in payment suffered by the plaintiff. The district court in this case, although noting that "[t]he delay plaintiffs have experienced in receiving the award made here is reflected in the hourly rates discussed," never set out precisely what part of the rates represented compensation for delayed payment.[14] Thus, we cannot determine whether the adjustment for delay in payment was adequate.

### IV.

We hold that the law of the case doctrine does not foreclose the award of attorneys' fees for services performed prior to 1971. Accordingly, we vacate the district court's order with the instruction that the court, after making appropriate findings of fact, fashion a new award.

VACATED and REMANDED.

---

**14.** In *Johnson v. University College of the University of Alabama*, 706 F.2d at 1210–11, we suggested that one way of adjusting the fees award for delay in payment would be to compensate counsel at current rather than historical hourly rates. There is no indication from the district court's order that this method was used; the hourly figures arrived at by the court seem too low to be current rates, unless a larger reduction than would seem appropriate was imposed because of the inadequate record keeping. In our view, however, using current rates to account for the delay in payment is somewhat inaccurate as it assumes that the increase in legal fees mirrors that of inflation, which in many instances is not the case. A more accurate method for adjusting for delays in payment would be to apply to the award a figure which is recognized as representing the time value of money over the period of the litigation.