Dr. Nui Loa PRICE, a.k.a. Maui Loa, Individually and in his Capacity as Chief of the Hou Hawaiians, et al., Plaintiffs,

v.

STATE OF HAWAII, et al., Defendants.

Civ. No. 89–00561 HMF.

United States District Court, D. Hawaii.

April 8, 1992.

---

Walter R. Schoettle, Keith J. Steiner, John P. Moon, Lissa Andrews, Honolulu, Hawaii, Kamuela Price, Haleiewa, Hawaii, for plaintiffs.

Cades Schutte Fleming & Wright, Philip J. Leas, Glenn H. Kobayashi, Warren Price, III, Randall Y.K. Young, Honolulu, Hawaii, for defendants.

Reinwald O'Connor Marrack Hoskins & Playdon, Alexander C. Marrack, Honolulu, Hawaii, for Honolulu Sailors Home Society.

ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS SMITH AND OKADA'S MOTION FOR AWARD OF COSTS AND AT-TORNEYS' FEES

FONG, District Judge.

## INTRODUCTION

On March 12, 1992, the court held a hearing on a motion for award of costs and attorneys' fees filed by defendants HonFed Bank, HFSL Corp., Peter S. Smith, and Glenn K. Okada on January 10, 1992 (the "Private Defendants").[1] Defendants State of Hawaii and State officials filed a statement of no opposition and non-appearance on February 13, 1992. Plaintiffs filed an opposition on February 13, 1992. The Private Defendants filed a reply on February 21, 1992.

## BACKGROUND

On or about July 21, 1989, plaintiffs filed a claim for monetary, injunctive and declaratory relief under 42 U.S.C. § 1983 as native Hawaiian special beneficiaries of a trust imposed by § 5(f) of the Hawaii Admissions Act upon certain lands granted by the United States to the State of Hawaii pursuant to § 5(b) of that Act. The complaint alleged that on March 21, 1893, the provisional Government of the Hawaiian Islands executed and delivered a deed for a certain parcel of land to private defendant Honolulu Sailors' Home Society ("HSHS") for use as a sailors' home upon the condition that "if the herein described lot or any part thereof shall at any time cease to be used for the purposes of a Sailors' Home, the whole of said lot shall forthwith revert to the Government of the Hawaiian Islands."

In 1898 the United States annexed the Hawaiian Islands. As part of the Joint Resolution of Annexation, the United States allegedly acquired the Hawaiian government's reversionary interest in the subject property. On August 21, 1959, the United States admitted Hawaii as its fiftieth state through the Hawaii Admissions Act. P.L. No. 86–3, 73 Stat. 4 (1959). Section 5(b) of that Act granted the reversionary interest to the new State of Hawaii. Under § 5(f), the lands conveyed to the State of Hawaii under § 5(b) shall be held by the State as a public trust to be used in any of five enumerated purposes, including "for the betterment of the conditions of native Hawaiians." The State delegated the responsibility as trustee to its Bureau of Land and Natural Resources.

On October 3, 1969, HSHS entered into a lease demising a portion of the subject property together with other properties to Harbor Properties for the purpose of developing the properties as a residential and commercial leasehold condominium, the Harbor Square Condominium ("Harbor Square"). Harbor Square consists of two towers, the Harbor Tower (which is on the

---

**1.** At the hearing, defendants HonFed Bank and HFSL Corp. withdrew their motion for award of costs and attorneys' fees.

subject property) and the Town Tower (which is not). Harbor Square continues to house a Sailors' Home Apartment which shall be occupied and used for all purposes permitted by the HSHS charter, however, the Sailors' Home Apartment falls exclusively within the Town Tower, which is not on the subject property. Plaintiffs asserted that no part of the subject land is now used as a sailors' home, thus violating the conditions of the 1893 grant. As such, plaintiffs asserted that the land reverted back to the grantor Government of the Hawaiian Islands and that the State of Hawaii as trustee of the § 5(f) trust had succeeded to the interests of the provisional government through the Joint Resolution of Annexation and the Admissions Act.

Plaintiffs alleged that HSHS and the developers of Harbor Square, the Private Defendants, wrongfully received rents, issues, and profits from the subject property and that such monies rightfully belonged to the beneficiaries of the § 5(f) trust. They also alleged that by virtue of the § 5(f) trust, the state defendants as trustees owed a duty to the plaintiffs to recover possession of the subject property and the moneys wrongfully lost. Finally, plaintiffs asserted that the defendants, acting under the color of state law, deprived plaintiffs of the rights guaranteed them by § 5(f) and that if the state defendants were permitted to continue as unsupervised trustees of the subject properties, the beneficiaries would suffer irreparable loss and injury.

Plaintiffs prayed for numerous forms of relief. First, they asked that HSHS and the Private Defendants be required to set forth the nature of their claims to the subject property. Second, plaintiffs sought a declaration regarding the nature of HSHS' and the Private Defendants' claims to the subject property. Third, plaintiffs sought declaratory judgment that the trustee State of Hawaii owns the subject property in fee simple in trust for the benefit of plaintiffs and other beneficiaries under § 5(f) of the Admissions Act. Plaintiffs requested that the court find a reversion of the estate created by the 1893 grant upon the interruption of use as a sailors' home and that it find that HSHS and the

Private Defendants have no legal interest in the property. Fourth, plaintiffs asked the court to permanently enjoin HSHS and the Private Defendants from asserting any claim in or to said property adverse to the trust. Fifth, plaintiffs sought a monetary judgment against all defendants, jointly and severally, in the amount of all rents, issues, and profits wrongfully received from the subject property by HSHS and the Private Defendants since the date of the lease, together with interest. Sixth, plaintiffs asked the court to appoint plaintiff Doctor Nui Loa Price, or some other suitable person having sympathy for native Hawaiians' concerns, as co-trustee with respect to the property recovered herein on behalf of the trust estate. Seventh, in the event their § 1983 claim succeeded, plaintiffs sought payment of their attorney's fees as a prevailing party pursuant to 42 U.S.C. § 1988.

On December 7, 1989, this court filed an Order Granting State Defendants' Motion to Dismiss and Private Defendants' Motion to Dismiss Complaint and Action. Defendant HSHS along with the Private Defendants moved to dismiss the § 1983 claim against them or, in the alternative, for summary judgment for failure to state a claim against them as non-state actors. This court granted the motion since private persons and organizations do not generally act under "color of law" and, therefore, do not ordinarily face liability under § 1983. Additionally, none of the evidence showed any conspiracy with a public official nor any actions in concert with the state that might suggest action taken "under color of law." Once the court dismissed the § 1983 claim against HSHS and the Private Defendants, the other claims against them failed for lack of subject matter jurisdiction because the case lacked complete diversity among the parties, the claims against the private defendants no longer raised the court's federal question jurisdiction, and § 1983 does not confer pendent party jurisdiction when a particular party does not otherwise face a claim raising federal question jurisdiction.

On April 17, 1990 this court filed an order granting HSHS' motion for costs and attorney's fees. HSHS, who was represented by Keith Steiner, requested the award under 42 U.S.C. § 1988, Federal Rules of Civil Procedure 11 and 54(d), and 28 U.S.C. § 1919. The court rejected HSHS' request for attorney's fees under § 1919 (suit dismissed for want of jurisdiction) because it would be unfair to grant such an award given the complexity of the law in the area of pendent party jurisdiction. However, the court did justify an award under § 1988 and Rule 11 by reasoning that plaintiffs' § 1983 claim was "clearly frivolous, groundless, and unreasonable." Order [April 17, 1990] at 8. The court stated that:

> Plaintiffs did not allege nor could they allege that HSHS acted under color of law. Similarly, plaintiffs could point to no action by HSHS that would approximate conspiracy with a public official or action in concert with such an official. The facts indisputedly [sic] show, that all the land dealings in this case represent completely private acts not taken under color of state law.

*Id.* Moreover, plaintiffs did not submit an opposition to HSHS' motion, nor did they appear at the March 12, 1990 hearing on the motion. HSHS' attorney devoted 46.90 hours of his time to this case and billed HSHS at a rate of $100 per hour plus excise tax. The court determined that both the amount of time spent and the rate charged appeared reasonable, and, therefore, granted HSHS $3718.00 in attorney's fees, the amount actually billed to HSHS, and $131.98 in costs, for a total award of attorney's fees, excise tax, and costs in the amount of $3849.98.

On or about April 17, 1990, plaintiffs appealed this court's dismissal of the complaint and its order granting HSHS costs and attorney's fees. On July 11, 1991, the Court of Appeals for the Ninth Circuit affirmed this court's decision "because the complaint so patently failed to state a claim against HSHS under section 1983 and because appellants and their counsel eschewed the opportunity to appear before the district court and disabuse it of its idea that the claim was entirely baseless." *Price v. State of Hawaii, et al.,* 939 F.2d 702, 709 (1991). The Ninth Circuit was "unable to say that the court abused its discretion when it awarded fees grounded upon both section 1988 and Rule 11." *Id.*

This motion filed on January 10, 1992, comes six months after the Ninth Circuit's decision. At the March 12, 1992 hearing, counsel for defendants Smith and Okada represented to the court that defendants now seek costs and attorneys' fees, including excise tax and interest, in the amount of $8,488.98.[2]

## DISCUSSION

### I. BASES FOR RECOVERY

Defendants Smith and Okada have requested this court to impose monetary costs, fees and sanctions upon plaintiffs for filing a frivolous action in violation of 42 U.S.C. § 1988 and Fed.R.Civ.P. 11.

#### A. *42 U.S.C. § 1988*

■ Section 1988 provides in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, 1986 or this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988 (1981). When the defendant is the prevailing party, the applicable standard is whether the plaintiff's claims were frivolous, unreasonable or without foundation, or whether the plaintiff continued to pursue its claims even after they were deemed frivolous or without foundation. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). A finding of subjective bad faith on the part of the plaintiff is not a prerequisite to an award of fees under § 1988. *Christians-*

2. This amount reflects Cades' total charges of $26,128.43 less the amount that HonFed Bank and HFSL Corp. have already paid in costs and attorneys' fees ($17,639.45).

*burg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

### B. *Rule 11 Sanctions*

 Rule 11 requires that sanctions be imposed upon a party filing a "pleading, motion or other paper" which is frivolous, legally unreasonable, without factual foundation, or interposed for any improper purpose. *Business Guides, Inc. v. Chromatic Communications Enter., Inc.,* — U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). As the Supreme Court recently explained:

> Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and "not interposed for any improper purpose." An attorney who signs the paper without such a substantiated belief "shall" be penalized by "an appropriate sanction."

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Rule 11 sanctions are also appropriate when a filing is interposed for "improper purposes," including harassment, unnecessary delay, or increasing the costs of litigation. *See Aetna Life Ins. Co. v. Alla Medical Serv., Inc.,* 855 F.2d 1470, 1476 (9th Cir.1988); *Lapin v. United States,* 118 F.R.D. 632, 635 (D.Haw.1987).

### II. TIMELINESS

As a preliminary matter, the court must decide whether the motion for attorneys' fees, costs and sanctions, which was filed more than two years after the court dismissed plaintiff's complaint, is timely.

 A motion for an award of attorney's fees under § 1988 is collateral to the judgment on the merits and, therefore, is not barred by the mere passage of time. *White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). In *White,* the Supreme Court held that a request for an award of attorney's fees under § 1988 was

not a "motion to alter or amend the judgment," subject to the ten-day timeliness standard of applicable rule. However, the Court soundly rejected the proposition that a court is required to consider such a request *whenever* it is filed. 455 U.S. at 451 n. 13, 102 S.Ct. 1166 n. 13 (suggesting that district court has discretion to reject motion for attorney's fees on basis of untimeliness only under special circumstances) (distinguishing *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)). Instead, the Supreme Court settled on the intermediate position that the district court has broad discretion to entertain an untimely motion for attorney's fees. As Justice Powell, writing for the Court, concluded:

> Section 1988 authorizes the award of attorney's fees "in [the] discretion" of the court. We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party.

455 U.S. at 454, 102 S.Ct. at 1167–68;[3] *see also Buchanan v. Stanships, Inc.,* 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988) (applying *White* rationale to recovery of costs).

 Therefore, this court has the discretion to deny the motion for costs and attorneys' fees under § 1988 on the basis of timeliness. In their memorandum in opposition, plaintiffs assert that they would have appeared at the March 12, 1990 hearing on the motion by HSHS for costs and attorney's fees if they had known that defendants Smith and Okada would seek the same. The assertion of prejudice, however, is not persuasive because, on March 12, 1992, plaintiffs were given a full and fair opportunity to litigate the merits of defendants' motion. Accordingly, the § 1988 motion is not barred by the delay.

 A motion for sanctions under Rule 11, however, should be denied when the

---

**3.** The Court also suggested that "district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees." 455 U.S. at 454, 102 S.Ct. at 1168. The District of Hawaii, however, has not adopted such a local rule.

moving party fails to act promptly. As the Advisory Committee on Rules noted:

> A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, *it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation,* and in the case of motions at the time when the motion is decided or shortly thereafter.

Fed.R.Civ.P. 11 (Notes of Advisory Committee on Rules to 1983 Amendment). In this case, the motion for Rule 11 sanctions, filed more than two years after the dismissal, is not prompt or timely. Defendants Smith and Okada provide no legitimate explanation for their failure to join in the motion filed by HSHS or for their decision to await the outcome of the dismissal on appeal.[4] Accordingly, the motion for sanctions under Rule 11 is DENIED on the basis of untimeliness.

## III. MERITS

### A. *(Offensive) Collateral Estoppel*

In this case, collateral estoppel or issue preclusion is governed by federal law.[5] Defendants Smith and Okada contend that this court's earlier finding that the action was frivolous, unreasonable, and without foundation should collaterally es-

top plaintiffs from claiming otherwise in opposition to this motion. *Order Granting Defendant Honolulu Sailors Home Society's Motion for Award of Attorney's Fees and Costs* at 8 (April 17, 1990); *Dr. Nui Loa Price, et al. v. State of Hawaii, et al.,* 939 F.2d 702 (9th Cir.1991) (upholding lower court's award of attorneys' fees, costs, and sanctions).

The court declines to apply collateral estoppel in keeping with the Supreme Court's instructions in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.E.2d 552 (1979). In *Parklane,* the Court squarely addressed the appropriateness of the offensive use of collateral estoppel.[6] Justice Stewart, writing for the Court in *Parklane,* cautioned against its application when "a plaintiff could easily have joined in the earlier action or where ... the application of offensive estoppel would be unfair to a defendant ..." 439 U.S. at 332, 99 S.Ct. at 652. By their prosecution of the instant motion, defendants Smith and Okada should be viewed as "plaintiffs," in reference to the language excerpted above. Defendants had *every* opportunity to join in the HSHS motion for attorneys' fees, costs, and sanctions. In fact, the billing records submitted by defendants indicate that there were extensive discussions between defendants and HSHS on this issue prior to March 12, 1990, the date on which the HSHS motion was heard. Defendants "wait and see" attitude is strongly criticized by the Court in *Parklane.*

---

**4.** Defendants Smith and Okada now explain that "rather than join in a motion that could ultimately prove premature or even inappropriate in light of an appellate decision, Defendants deferred filing the Motion pending the Ninth Circuit Court's disposition of the appeal.... Defendants properly awaited final disposition of the Ninth Circuit Court proceeding over HSHS' recovery of costs and attorneys' [sic] fees before filing the Motion." Reply Memorandum, p. 2–3. As the Advisory Committee Notes to Rule 11 suggest, defendants "strategic" decision to await appellate review does not comport with the purposes of the rule.

**5.** Defendants Smith and Okada incorrectly cite Hawaii law for the proposition that the court's first decision on the motion for attorneys' fees,

costs, and sanctions filed by HSHS should be respected as the "law of the case." First, state law on judgments is not applicable because both the instant motion and the HSHS motion arose in federal court. Second, defendants refused to join the HSHS motion and, therefore, were not parties for the purposes of the court's judgment. As such, defendants are not entitled to use res judicata as an offensive weapon against plaintiffs.

**6.** There is no question that the defendants Smith and Okada seek to apply collateral estoppel offensively against plaintiffs in this case. Defendants have not sought to invoke the doctrine as a defense but rather to preclude plaintiffs from defending against the motion for attorneys' fees, costs, and sanctions.

Offensive use of collateral, on the other hand, creates precisely the opposite incentive [of reducing the amount of litigation]. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to lose by not intervening in the first action.

439 U.S. at 331, 99 S.Ct. at 651.

■■■ Furthermore, collateral estoppel should not be applied offensively when it would prejudice a plaintiff. As the Court again explained, such prejudice may occur when a party faces only nominal damages in the first action.

> If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable.

439 U.S. at 331, 99 S.Ct. at 651. In the first motion for attorneys' fees, costs, and sanctions, plaintiffs were facing possible exposure in the amount of $3,849.98. In this second motion, plaintiffs are facing possible exposure in the amount of $8,488.98. There is merit to plaintiffs' claim that the first motion would have been more vigorously opposed, at least by attendance at the March 12, 1990 hearing, had their exposure been greater. Accordingly, defendants Smith and Okada are not entitled, through collateral estoppel, to the benefits of the April 17, 1990 Order.

### B. *Frivolous, Unreasonable, Or Without Foundation*

■■■ This court has already found that there was no factual basis for the claim that HSHS was acting under color of state law. *Order Granting Defendant Honolulu Sailors Home Society's Motion for Award of Attorney's Fees and Costs* at 8 (April 17, 1990). As this court explained, "[t]he facts indisputably show, [sic] that all the land dealings in this case represent completely private acts not taken under color of state law." *Id.* For the same reason, the court finds that the action filed against defendants Smith and Okada was frivolous, unreasonable, and without foundation.[7]

### IV. REASONABLENESS OF COSTS AND ATTORNEYS' FEES

■■■ Defendants Smith and Okada are entitled to recover costs and attorneys' fees incurred between August 28, 1989 (the date on which the names of Smith and Okada first appeared on the billing summaries) and March 12, 1992. However, as the court concluded above, defendants Smith and Okada had ample opportunity to join in the HSHS motion for attorneys' fees, costs, and sanctions, which was heard on March 12, 1990. Their "strategic" decision to await the disposition of the case on appeal prior to filing the instant motion unreasonably delayed the adjudication of their claims for costs and attorneys' fees. On this basis, the court rejects defendants Smith and Okada's request for pre-judgment interest on costs and attorneys' fees.

The calculations, however, are complicated by the fact that the billing worksheets submitted by defendants Smith and Okada reflect costs and attorneys' fees incurred on behalf of defendants HonFed Bank,

---

**7.** As the memorandum in opposition recognizes, defendants Smith and Okada are even farther removed from any possible nexus with the State of Hawaii than HSHS. Smith and Okada no longer had any interest in the subject property when plaintiffs filed suit. Significantly, plaintiffs, in their memorandum in opposition, did not dispute the allegation that the action was frivolous, unreasonable, and without foundation. At the March 12, 1992 hearing, plaintiffs were afforded a full and fair opportunity to respond to the allegation. As a response, plaintiffs argued that the requested costs and attorneys' fees for the Private Defendants totalling $26,128.43 demonstrated that the action was not frivolous, unreasonable, and without foundation. The court is not persuaded that the amount of legal bills incurred in defending an action is competent evidence that the action has foundation.

HFSL Corp., Smith and Okada. Furthermore, a significant number of the entries on the attorney worksheets detail work that was performed only on behalf of defendants HonFed Bank and HFSL Corp.[8] The court, therefore, must apportion the amounts reflected in the billing worksheets among the Private Defendants. An attorney entry that reflects work performed solely on behalf of defendants Smith and Okada is apportioned, in its entirety, to defendants Smith and Okada. An attorney entry that arguably reflects work performed on behalf of all the Private Defendants is apportioned to defendants Smith and Okada on a thirty-two percent basis (32%). The court finds that the figure of thirty-two percent (32%) is reasonable based upon a comparison of Cades' total charges ($26,128.43 in costs and attorneys' fees) and the amount of those charges apportioned by Cades to defendants Smith and Okada.[9] All costs incurred between August 28, 1989 and March 12, 1992 are apportioned on the same percentage basis.

After apportioning the amounts reflected in the worksheets, the court finds that defendants Smith and Okada are entitled to $253.73 in costs and $3,896.40 in attorneys' fees. Accordingly, the courts AWARDS defendants Smith and Okada the total sum of $4,150.13 in costs and attorneys' fees.

IT IS SO ORDERED.

---

8. For example, the issue of corporate dissolution or any other restructuring plan was not relevant to the defense of Smith and Okada.

9. At the March 12, 1992 hearing, defendants' counsel represented to the court that HonFed and HFSL Corp. have either paid or agreed to pay $17,639.45 in costs and attorneys' fees incurred by Cades.