Andrew L. MANNINGS, et al., Plaintiffs,

v.

The SCHOOL BOARD OF HILLSBOR-OUGH COUNTY, FLORIDA (Formerly Board of Public Instruction of Hillsborough County, Florida), et al., Defendants.

No. 58–3554–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

April 21, 1994.

Francisco Rodriguz, Tampa, FL, for Andrew L. Mannings.

Warren H. Dawson, Law Office of Warren H. Dawson, Tampa, FL, for Shayron B. Reed, Sandra E. Reed, Nathaniel Cannon, Norman Thomas Cannon, Tyrone Cannon, Darnel Cannon and Gail Rene Myers.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, P.A., Walter Crosby Few, Few & Ayala, Tampa, FL, for Board of Public Instruction of Hillsborough County, FL, and J. Crockett Farnell.

John William MacKay, John W. MacKay, P.A., Tampa, FL, for Norman Edwin Armstrong, Jr., intervenor-plaintiff Bryan Tyler Armstrong, Carlton Lewis, Emanuel Lewis, Robert John Burr, Cheryl Ann Burr, Steven Jonathan Burr, Daniel Renee Burr, Archie Lee McRae, Jr., Maureen Elrod McRae and Ameer McRae.

### ORDER AWARDING ATTORNEYS' FEES

KOVACHEVICH, District Judge.

Before this Court for consideration are Legal Defense Fund's Response to Court's Order to Show Cause in Support of its Request for Attorneys' Fees (Dkt. # 540) and Defendants' Reply to Legal Defense Fund's Response to Court's Order Directing Plaintiffs to Show Cause (Dkt. # 545). This Court has thoroughly reviewed the foregoing responses as well as the carefully compiled affidavits submitted by the Legal Defense Fund in support of its response to this Court's Order to Show Cause (Dkt. # 542).

First, the Court wishes to commend Plaintiffs' fee counsel for electing to compile and submit the thorough and well-organized sup-

plement to the record in support of the fee request. Had Plaintiffs gathered such information and submitted it to the Court at the time they filed their initial request, both parties and the Court would have been saved considerable time and expense.

This Order will first address the plaintiffs' request for attorneys' fees for services rendered during the period from 1958 to 1971 and the issues relevant to that request. Next, this Order will discuss the plaintiffs' requested fees for services performed during the period from 1972 to 1991.

## I. Delay and Special Circumstances

The Legal Defense Fund correctly points out that delay, in and of itself, has never been found to constitute a "special circumstance" warranting denial of a request for attorneys' fees in absence of either demonstrated prejudice or the entry of a final order. However, this statement essentially begs the question posed to the plaintiffs by this Court's Order to Show Cause. One of the primary issues this Court ordered the plaintiffs to address was why plaintiffs' admittedly voluntary delay of, by even the most conservative calculation, more than a decade and a half in requesting attorneys' fees did not prejudice the defendants.[1]

Such an answer should have been given in consideration of the fact that a "final" consent order was indeed entered by the Court in this case in 1971. Although that order did not signal the end of the litigation, it did settle interim aspects of the case, particularly the issue of implementation of desegregation in light of *Swann v. Charlotte–Mecklenburg*

*Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

The Legal Defense Funds (the Fund) points out that the 1971 consent order did not signal an absolute end to the litigation and thus cannot be a basis for drawing a line as to the availability of attorneys' fees for work performed prior to 1971. For this proposition the Fund cites *Gaines v. Dougherty County Bd. of Educ.*, 775 F.2d 1565, 1570 n. 11 (11th Cir.1985). This argument illustrates the Funds' misunderstanding of the *Gaines* Court's analysis.

Certain circumstances in the *Gaines* litigation, including: (1) the district court's repeated failure to implement the Eleventh Circuit Court of Appeals' mandate after appeal, which in turn caused the plaintiffs to file several motions to compel implementation and (2) inactivity caused by the reassignment of the case to a new judge during the period in question, led the *Gaines* Court to find "no natural break in the case or any inequity in an award of attorneys' fees for services performed" from 1966 to the 1971 consent order entered in that case. *Gaines*, 775 F.2d at 1570 n. 11. Such circumstances are not present in this case. Nor is it entirely clear that the parties in this matter anticipated any further "litigation" in terms of motions or other contested matters. Instead it appears all any party expected was that the Court and the plaintiffs would monitor the defendants' implementation of the agreed plan.

 In fact, a few months after the Court entered its 1971 order, this litigation became largely inactive for quite a few years with this Court retaining jurisdiction merely to ensure compliance with the consent order.[2]

---

1. The Court acknowledges that this is not the only issue plaintiffs were ordered to address in the Order to Show Cause. Further, the Court recognizes that the defendants bear the burden of proving prejudice in the analysis of special circumstances. However, because of the plaintiffs' long delay in requesting fees, this Court felt it appropriate for the plaintiffs to address the issue of unfairness or prejudice.

2. The Court recognizes the importance of the remedial phase in school desegregation cases and the absolute necessity of plaintiffs' attorney's involvement in such remedial action in this case. However, plaintiffs cannot deny that the charac-

ter of the services rendered by Plaintiffs' attorneys in this case changed soon after the 1971 consent order from the more active work of litigating for and preparing a proposed desegregation plan to a more passive role receiving and reviewing status reports as to the implementation of the approved plan.

In fact, with the exception of the plaintiffs' attorney's involvement in the appointment of the Bi–Racial Committee, the majority of entries contained in the Time and Activity Reports after 1971 describe receipt and review or discussion of defendants' status reports and the monitoring of school board meetings. The Bi–Racial Committee itself was formed to serve, in part, a monitor-

This is precisely the type of "natural break" this Court believes presents an appropriate opportunity for an interim request for attorneys' fees based upon a close reading of *Gaines* as well as *Northcross v. Bd. of Educ.,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Further, this natural break provides a logical reference point whereby a district court may, in its discretion, bar an award of attorneys' fees when the request comes after great delay and results in unfairness to the opposing party. *Gaines,* 775 F.2d at 1570 n. 11 [citing *Northcross,* 611 F.2d at 635].

■ However, despite this natural break in activity, the defendants still have the burden of proving, by a strong showing, that the plaintiffs' tardiness in requesting fees for services rendered during the period from 1958 to 1971 has prejudiced the defendants. *Martin v. Heckler,* 773 F.2d 1145, 1150 (11th Cir.1985); *Northcross,* 611 F.2d 624, 635 (6th Cir.1979). The Court finds that the defendants have failed to carry their burden of proof on this issue.

■ As this Court has previously recognized, a prevailing party in a school desegregation case, should recover attorneys' fees under 42 U.S.C. § 1988 unless special circumstances would render an award unjust. *Gaines,* 775 F.2d at 1569. As plaintiffs' fee counsel points out, special circumstances is an "exceedingly narrow" exception to 42 U.S.C. § 1988 to be applied only in unusual cases. *Crowder v. Housing Auth. of City of Atlanta,* 908 F.2d 843, 850 (11th Cir.1990); *Martin,* 773 F.2d at 1149–50 (11th Cir.1985). The defendants, as the party opposing the plaintiffs' fee request, have the burden of proving, by a strong showing, that special circumstances render an award to plaintiffs of this portion of plaintiffs' fee request unjust. *Martin,* 773 F.2d at 1150.

■ The defendants claim prejudice in that they cannot verify the number of hours sought by the Fund as counsel for the plaintiffs, due to the lack of contemporaneous records for the period from 1958 to 1971.

However, even if plaintiffs had been prompt and sought an award of fees in 1976 after the Civil Rights Attorney's Fees Award Act had been passed, their fee application would not have included contemporaneous time records. As Mr. Chachkin pointed out in his affidavit in support of plaintiffs' fee request, prior to the 1976 act, the Fund attorneys did not maintain contemporaneous time records. Accordingly, under the best of circumstances, the defendants and the Court would have had to satisfy themselves as to the reasonableness of the claimed hours spent through the assistance of recreated time records and affidavits by other civil rights attorneys. *See Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988). This is precisely the type information that plaintiffs' fee counsel has now wisely provided to the defendants and this Court.

Further, the Fund's explanation for its lack of contemporaneous records for this time period is perfectly reasonable; the Fund had no reason, prior to 1976, to expect compensation for services rendered and thus had no motivation to spend time compiling such records. This Court cannot envision any purpose to be served by denying the plaintiffs' attorneys' fees simply because the Legal Defense Fund did not anticipate a change in the law from the traditional American Rule directing each party to pay its own fees.

The Court agrees with Plaintiffs' fee counsel's observation that the other basis upon which Defendants support their claims of prejudice do not merit consideration. Therefore, this Court finds that the plaintiffs' delay in requesting attorneys' fees, although excessive and unwarranted, did not prejudice the defendants and is accordingly not a special circumstance justifying a bar to a fee award for services rendered by plaintiffs' counsel for the period from 1958 to 1971.

## II. Interest Claim to Compensate for Time Value of Money

■ Despite the Fund's characterization otherwise, awarding plaintiffs interest in con-

---

ing function. These activities clearly represent a break from traditional litigation activities such as discovery, motion practice and preparation for trial. By this distinction the Court does not

mean to suggest that one type of service is more valuable than the other. The Court merely points out the change as evidence of the natural break that occurred in this case.

junction with an award of fees for services rendered during the period from 1958 to 1971 would constitute an enhancement in this case. As the above discussion notes, this Court finds that Plaintiffs' delay in seeking an award of attorneys fees does not entirely bar recovery of those fees. However, the Court finds no basis in the legal authority presented by fee counsel for an interest award to compensate the plaintiffs' attorneys for a delay in the award of fees caused entirely by plaintiffs' attorneys' own lack of diligence.

Although not binding precedent, the Court finds *Price v. State of Hawaii,* 789 F.Supp. 330, 337 (D.Hawaii 1992) both instructive and persuasive on this issue. In that case, as in the case at bar, the district court found the prevailing party's delay in bringing its fee request did not bar a fee award. *Price,* 789 F.Supp. at 335. However, the district court in *Price* found the fee applicants' "strategic decision" not to file a fee request until after the disposition of that case on appeal unreasonably delayed the adjudication of their claims for fees and costs. *Id.* at 337. Because delay in the award of attorneys' fees was caused solely by the fee applicants, the *Price* court rejected their request for interest on costs and fees. *Id.*

Whatever the reasons for delay in this case, change of counsel of record, or more pressing matters that needed tending, the fact is that the delay is entirely attributable to plaintiffs' attorneys of record at every interval from at least 1976 forward. Had plaintiffs' attorneys been truly concerned with the time value of their fees, they would have requested those fees during the natural break in the matter, a break that continued throughout 1976, the first point in time that plaintiffs' fee counsel claim plaintiffs could have sought fees under § 1988. To put the plaintiffs' attorneys in the position they would have been in 1976 had they requested and been paid their fees in that year would be to reward their lack of diligence. Accordingly, plaintiffs' fee counsel's request for interest on fees to be awarded for services rendered from 1958 to 1971 is hereby DENIED.

### III. Reasonableness of Attorneys' Fees for Services Rendered from 1958 to 1971

The above discussion has disposed of the plaintiffs' claim for interest on fees requested during this period. The discussion below will address the remaining issues regarding reasonableness of the fees requested by Plaintiffs for services rendered from 1958 to 1971.

As the Eleventh Circuit recently noted, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Brooks v. Georgia State Board of Elections,* 997 F.2d 857 (11th Cir.1993). The following discussion will first address the reasonableness of the hours for which plaintiffs' fee counsel seek compensation and then turn to the reasonableness of the hourly requested.

### A. Reasonableness Of Hours Spent For Services Rendered from 1958 to 1971

The lack of contemporaneous records for this time period has already been addressed. The Court finds that the plaintiffs have been properly conservative in the estimation of time spent by their attorneys on tasks during this period to compensate for the lack of time records. The affidavits of Mr. Greiner and Mr. Cloutman support this determination and the Court has found those affidavits helpful in that regard. Further, the Court's own perusal of the Time and Activity Report submitted by the plaintiffs' fee counsel confirms the reasonableness of the hours requested per task during this period.

The defendants strenuously argue that estimates, however educated or conservative, are not reasonable and cannot justify a fee award. Further, defendants invite this Court to follow *Von Clark v. Butler,* 916 F.2d 255 (5th Cir.1990) and bar plaintiffs' fee application for this period due to lack of time records or reliance on "faulty" timesheet summaries. However, the defendants fail to specify what portion of the Time and Activity Report is faulty or to explain why a conser-

vative estimate of time is per se objectionable under these circumstances.

In allowing the defendants an opportunity to respond to plaintiffs' response to the show cause order, the Court requested that defendants point out specific flaws in the plaintiffs' fee application if such flaws were apparent to the defendants. The defendants have failed to do so.

Based upon the defendants' lack of specific objections to the time entries in the plaintiffs' fee request for this period, the Court can only surmise that the defendants do not dispute the reasonableness of the hours spent on those specific tasks. The defendants general complaint that the plaintiffs' estimate is deficient or unreasonable merely because it is an estimate does not persuade. The Court finds that the Eleventh Circuit contemplated the use of estimated time records in certain circumstances as part of "secondary documentation" used to prove the reasonableness of fees. *Johnson v. University College of the Univ. of Alabama*, 706 F.2d 1205, 1207 (11th Cir.1983), *cert denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). Accordingly, the Court finds the 1376.1 hours requested by plaintiffs to be reasonable time spent by plaintiffs' attorneys defending the plaintiffs' civil rights in this matter during the time period in question.

### B. Reasonableness of Requested Hourly Rate For Services Rendered from 1958 to 1971

■ Defendants fail to address the issue of reasonableness of the hourly rate plaintiffs request for services rendered during this time period. Plaintiffs have requested an hourly rate of $100.00, the prevailing market rate for such services in 1974. This request is based upon the assumption that the very earliest date during which fees could have been awarded in this case in 1974.

Defendants acknowledge elsewhere in their response that the hourly rate of $100.00 is justified during a period commencing after 1971 until 1989. The Court finds both this statement and the affidavits of Mr. Germany and Mr. Barkin submitted by Plaintiffs' fee counsel persuasive on this issue. Although the $100.00 per hour rate may be a bit high

in relation to 1958, it may also, as plaintiffs' fee counsel suggest, be a bit low for services rendered during the later portion of the time period. However, in relation to the entire span of time, the parties seem to agree that the rate is reasonable.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 [citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)]. The relevant legal community involved in this case is Tampa. The agreement between the parties' attorneys, all of whom are Tampa attorneys, and the affidavits of other local attorneys with reasonably comparable skills, experience and reputation supports the finding that $100.00 per hour is a reasonable rate for services rendered by the plaintiffs' attorneys during this time period.

Accordingly, pursuant to the discretion this Court has to decide the reasonableness of hourly rates for attorneys' fees, *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1187 (11th Cir.1983), the Court finds the hourly rate of $100.00 reasonable for services rendered by plaintiffs' attorneys during this time period. By this the Court intends that all services for 1971 should be compensated at the $100.00 per hour rate. Accordingly, the Court directs plaintiffs fee counsel to submit revised calculations to this Court consistent with this determination prior to the final award of fees.

### IV. Reasonableness of Attorneys' Fees for Services Rendered from 1972 to 1991

The parties in this case have parsed out the analysis of attorneys' fees sought by the plaintiffs in several different ways. The Court was primarily concerned with distinguishing between the fees sought during different time frames only to the extent that a delay in seeking fees may have prejudiced the defendants. As the Court has already dispensed with that issue, the fees plaintiffs seek for the balance of the period of the litigation will be dealt with below.

## A. Reasonableness of Hours Spent For Services Rendered from 1972 to 1991

■ Defendants express concern that approximately 83% of attorney hours for which plaintiffs seek compensation during this period were spent by Mr. Dawson monitoring the case. However, services devoted to reasonable monitoring, both to verify full compliance and to ensure that the plan is indeed working to desegregate the school system are compensable services and are, in fact, essential to the long-term success of the plaintiffs' suit. *Northcross*, 611 F.2d at 637. Services performed by the plaintiffs' attorneys such as forming, maintaining, and monitoring the Bi–Racial Committee, reviewing boundary changes, conferring with class members, and monitoring defendants' status reports are reasonable and normal activities that a desegregation plaintiff's attorney is expected to perform during the remedial phase of a school desegregation case. As such plaintiffs' claim for attorneys' fees for those services is entirely reasonable. *Id.*

However, during this period of time, unlike the time period from 1958 to 1971, plaintiffs' attorneys should have been well aware of the need for accurate and specific time records. At least by 1976, plaintiffs' attorneys, as members of the Legal Defense Fund, should have been particularly attuned to the documentary requirements necessary to prove the reasonableness of hours spent under the civil rights or school desegregation fee shifting statutes.

The hours spent by Mr. Chachkin performing legal services for the plaintiffs during the period from December 1990 to October 1991 appear to this Court to be reasonable and appear to be documented through the use of contemporaneous time records. Further, defendants do not dispute the reasonableness of the hours spent by Mr. Chachkin, although

there is dispute as to the reasonableness of the hourly rate sought for Mr. Chachkin's services. Accordingly, the Court finds the hours spent by Mr. Chachkin reasonably compensable under § 1988.

The Court notes that a thorough review of Mr. Dawson's Time and Activity Report for this time period reflects that a great part of this report is an estimation of Mr. Dawson's time spent on the tasks listed. Despite this fact, the Court finds no problem with the entries on Mr. Dawson's Time and Activity Report for services rendered on individual dates, at least those entries that were represented as time spent in the plaintiffs' original fee request.[3] Nor do the defendants contest the reasonableness of these hours spent by Mr. Dawson.

■ Both Defendants' and this Court's primary concern regarding the reasonableness of the hours Mr. Dawson spent on this case center on the entries in Mr. Dawson's Time and Activity Report describing Mr. Dawson's year long monitoring activity for each year during the period from 1974 to 1991. As noted above, monitoring activity can be extremely important to the success of the remedial phase of school desegregation litigation. However, as with all hours claimed in fee requests, the amount of time spent monitoring must be proven to have been time reasonably spent. *Northcross*, 611 F.2d at 637.

■ Although Mr. Dawson states in his affidavit that he spent 5% of this time reading newspaper reports of school board meetings, that accounts for only a small percentage of the monitoring represented by these entries. For example, it is impossible from these entries to discern exactly how Mr. Dawson kept himself informed as to the school board's other activities, developments in the law, and concerns or problems within

---

**3.** The Court finds that plaintiffs' claim for fees representing the 898 additional hours Mr. Dawson apparently missed in his initial estimation of hours during this period is untimely. Local Rule 4.18. Again, this result is due entirely to the plaintiffs' attorney's own lack of diligence in keeping accurate and contemporaneous time records, despite abundant notice during this time period of the need to do so.

The Court notes defendants' continuing objection that the plaintiffs have failed to submit fees for this period within the required time under the local rules. However, the Court finds that, with the exception of the added claim noted above, plaintiffs request for fees rendered during the period from late 1971 to 1991 was timely submitted.

the community regarding school desegregation. Nor is it self-evident from the entries that the process by which Mr. Dawson kept himself so informed was reasonably efficient. Most importantly, the stock description in this entry for each of the years involved is not specific enough to allow either the defendants or this Court to determine whether the monitoring was in fact reasonably related to this litigation.

This is not to say that the monitoring time estimated by Mr. Dawson may not ultimately be proven reasonable time spent in this litigation. However, given the fact that plaintiffs were aware of the defendants' objections to these entries and have had ample opportunity to expand upon the vague description, the Court finds defendants' request to depose Mr. Dawson as to these entries to be well taken.

In *Harkless v. Sweeny Independent Sch. Dist.*, 608 F.2d 594 (5th Cir.1979), the Fifth Circuit approved the district court's use of discovery tools to determine the reasonableness of attorneys' fees in the absence of contemporaneous time records. Initially, this Court was not inclined to allow the parties to engage in a full round of discovery regarding the issue of attorneys' fees. However, now that the issues have been narrowed, the Court finds that fairness to the defendants requires the Court follow the example of the district court in *Harkless*. Accordingly, the defendants motion to depose Mr. Dawson is GRANTED; however the scope of that deposition is limited to questions relating to the reasonableness of the hours spent as reflected in the year-long monitoring entries of Mr. Dawson's Time and Activity Report.

The Court finds the remainder of the hours spent as reflected on Mr. Dawson's Time and Activity report for the period from 1972 to 1991 reasonable time spent representing the plaintiffs' civil rights during this time period. The added fees tacked onto the amended application are not compensable because they were requested well past the application deadline as set forth in Local Rule 4.18. Accordingly, the hours spent on tasks evidenced by the individual entries by specific date on Mr. Dawson's original Time and Activity Report are compensable at a reasonable hourly rate to be discussed below. Further, as noted above, the Court finds the hours spent by Mr. Chachkin in representing the plaintiffs in this matter to be reasonable.

### B. Reasonableness of Requested Hourly Rate For Services Rendered From 1972 to 1991

██ As stated above, a reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable abilities. *Norman*, 836 F.2d at 1299. The plaintiffs seek compensation for attorneys' services during the period from 1971 to 1974 at the rate of $125.00 per hour. For services rendered by Mr. Dawson from 1975 to 1991, Plaintiffs seek compensation at the rate of $175.00 per hour. For services rendered by Mr. Chachkin from 1990 to 1991, plaintiffs seek compensation at the rate of $200.00 per hour.

██ The Court finds the analysis as to the hourly rate for services rendered from 1972 to 1974 to be the same as that for services rendered from 1958 to 1971. In suggesting a $100.00 per hour rate for services rendered from 1958 to 1971, the plaintiffs stated that the earliest time period during which they could reasonably have sought fees was 1974, and that the relevant market rate during that period was between $100.00 to $125.00 per hour. Although plaintiffs seek the higher end of that range for services rendered from 1971 to 1974, the Court finds no reason to distinguish between these years.

Plaintiffs' fee counsel suggest the Court award the top end of the range because the request for these fees was timely. However, the Court has not penalized the plaintiffs for their tardiness in submitting a request for the earlier fees because no prejudice was shown by defendants. Therefore, plaintiffs' fee counsel's assumption that the $100.00 per hour rate the Court is awarding for services rendered from 1958 to 1971 is a penalty is simply incorrect. Based upon the assertions of the parties and the affidavits submitted as described above, the Court finds the $100.00 per hour rate reasonable for services ren-

dered from 1972 to 1974, as well as a reasonable rate for services rendered from 1958 to 1971.

■ Regarding the plaintiffs requested rate for Mr. Chachkin's services, the Court notes Mr. Chachkin's wealth of experience in school desegregation litigation throughout the country. Yet, the reasonableness of hourly rates are determined by the prevailing market rate in the relevant community. *Norman*, 836 F.2d at 1299. Defendants argue that the rate plaintiffs seek for Mr. Chachkin's services in not representative of prevailing market rates in Tampa. However, the Court finds plaintiffs have submitted affidavits by Mr. Hanlon, Mr. Zinober, and Ms. Wright–Douglas, attesting to a range in fees in the Tampa market of $160.00 to $275.00 per hour for similar services during the relevant time period. While the $200.00 per hour rate is toward the higher end of the range, an attorney with Mr. Chachkin's experience would undoubtedly command a higher end rate in this market. Accordingly, the Court finds the hourly rate plaintiffs seek for Mr. Chachkin's services reasonable.

■ As to services for Mr. Dawson's work in this case from 1975 to 1991, this Court finds that a rate of $165.00 dollars per hour is reasonable. The plaintiffs seek an hourly rate for Mr. Dawson's services during this time period of $175.00 per hour. This rate is within the range attested to by those affiants mentioned above. The defendants, however, have submitted an order by another judge in this district awarding attorneys' fees for services rendered during roughly the same time period at a rate of $155.00 per hour. The Court notes that this award was for fees from 1963 to 1989. Accordingly, while defendants have submitted documentary evidence in support of a lower rate than that sought by plaintiffs, and such evidence has been taken into account, the $155.00 rate is determined by the Court too be somewhat low for the period of time in question from 1975 to 1991.

The Court finds a rate of $165.00 to be within the range attested to by plaintiffs' affiants and close to the range of hourly rates awarded by Judge Hodges for services rendered in a somewhat earlier time period.

This compromise is made with Congress' original intent in passing the civil rights fee shifting statute in mind. Such a result will compensate the plaintiffs' attorneys for time spent as private "Attorneys General" in pursuing the civil rights of the plaintiff class. At the same time, the fees awarded have been calculated conservatively in order not to provide a windfall to the plaintiffs attorneys. Accordingly it is

**ORDERED** that the defendants' motion that the Court deny plaintiffs' attorneys' fees application for services rendered from 1958 to 1971, based upon special circumstances, be **DENIED**. Likewise, plaintiffs' request for pre-judgment interest for fees rendered from 1958 to 1971 to compensate for delay be **DENIED**.

Next, plaintiffs' application for attorneys' fees for services rendered from 1958 to 1971 be **GRANTED**. Accordingly, **DEFENDANTS ARE ORDERED TO PAY PLAINTIFFS $100.00 PER HOUR (FOR 1376.1 HOURS) FOR FEES RENDERED DURING THIS PERIOD** as noted by the Court to include all of 1971. Further, plaintiffs' application for attorneys' fees for services rendered from 1972 to 1991 be **GRANTED** as to the attorneys' fee requested in plaintiffs' original, as opposed to amended, Time and Activity Report, with the exception of those services represented by the yearly entries for monitoring by Mr. Dawson's Time. Accordingly, **DEFENDANTS ARE ORDERED TO PAY PLAINTIFFS $200.00 PER HOUR FOR MR. CHACHKIN'S FEES AND $165.00 PER HOUR FOR MR. DAWSON'S FEES AS ALLOWED BY THE COURT. PRIOR TO PAYMENT OF THESE FEES,** Plaintiffs are hereby **ORDERED** to submit to this Court and to the defendants a revised fee application conforming with the Court's Order. The Clerk of the Court **SHALL ENTER** judgment for the plaintiffs for attorneys' fees pursuant to this and the preceding paragraphs.

Additionally, defendants' motion to depose Mr. Dawson be **GRANTED,** with the proviso that the scope of all deposition questions will be limited to ascertaining the reasonableness of the hours spent by Mr. Dawson as re-

flected in the yearly monitoring entries of Mr. Dawson's Time and Activity Report. All other motions for discovery by either party related to the issue of attorneys' fees are hereby **DENIED.**

After Mr. Dawson's deposition, Plaintiffs will be allowed to submit a supplemental application for attorneys' fees for the year long monitoring services of Mr. Dawson. The Court hereby **DEFERS RULING** on a determination of the reasonableness of hours spent by Mr. Dawson on these monitoring activities until that time. The Court **IMPOSES** a ninety (90) day deadline for the completion of discovery and resubmissions, requests for fees or objections thereto, or the Court will deny attorneys' fees for these service, unless the delay is attributable to the defendants. If delay is attributable to the defendants, the Court will consider imposition of appropriate sanctions.

**DONE AND ORDERED.**